**13 CIV 3994**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; NEW YORK CIVIL LIBERTIES UNION; and NEW YORK CIVIL LIBERTIES UNION FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES R. CLAPPER, in his official capacity as Director of National Intelligence; KEITH B. ALEXANDER, in his official capacity as Director of the National Security Agency and Chief of the Central Security Service; CHARLES T. HAGEL, in his official capacity as Secretary of Defense; ERIC H. HOLDER, in his official capacity as Attorney General of the United States; and ROBERT S. MUELLER III, in his official capacity as Director of the Federal Bureau of Investigation,<br><br>Defendants. | ECF CASE<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>RECEIVED JUN 11 2013 S.D.N.Y. CASHIERS<br><br>Case No. _____<br><br>Hon. _____ |

Arthur N. Eisenberg (AE-2012)
Christopher T. Dunn (CD-3991)
New York Civil Liberties Union
    Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
Brett Max Kaufman (BK-2827)
Patrick Toomey (PT-1452)
Catherine Crump (CC-4067)
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
jjaffer@aclu.org

June 11, 2013

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  This lawsuit challenges the government's dragnet acquisition of Plaintiffs' telephone records under Section 215 of the Patriot Act, 50 U.S.C. § 1861.[1] In response to information published by the media, the government has acknowledged that it is relying on Section 215 to collect "metadata" about every phone call made or received by residents of the United States. The practice is akin to snatching every American's address book—with annotations detailing whom we spoke to, when we talked, for how long, and from where. It gives the government a comprehensive record of our associations and public movements, revealing a wealth of detail about our familial, political, professional, religious, and intimate associations.

2.  The government has confirmed the authenticity of an order issued six weeks ago by the Foreign Intelligence Surveillance Court ("FISC") requiring Verizon Business Network Services Inc. ("VBNS") to turn over, every day, metadata about the calls made by each of its subscribers over the three-month period ending on July 19, 2013. Government officials have indicated that the VBNS order is part of a program that has been in place for seven years and that collects records of all telephone communications of every customer of a major phone company, including Verizon, AT&T, and Sprint.

3.  Plaintiffs the American Civil Liberties Union and the American Civil Liberties Union Foundation are current VBNS subscribers whose communications have already been monitored by the government under the VBNS order and whose communications continue to be monitored under that order now. Plaintiffs the New York Civil Liberties Union and the New York Civil Liberties Union Foundation are former customers of VBNS whose contract of service recently expired but whose telephony metadata likely remains in government databases. The

---

[1] "The Patriot Act" is the common name for the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272.

1

government's surveillance of their communications (hereinafter "Mass Call Tracking") allows the government to learn sensitive and privileged information about their work and clients, and it is likely to have a chilling effect on whistleblowers and others who would otherwise contact Plaintiffs for legal assistance. This surveillance is not authorized by Section 215 and violates the First and Fourth Amendments. Plaintiffs bring this suit to obtain a declaration that the Mass Call Tracking is unlawful; to enjoin the government from continuing the Mass Call Tracking under the VBNS order or any successor thereto; and to require the government to purge from its databases all of the call records related to Plaintiffs' communications collected pursuant to the Mass Call Tracking.

## JURISDICTION AND VENUE

4.   This case arises under the Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331. The Court also has jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 702. The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

5.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (c)(2).

## PLAINTIFFS

6.   The American Civil Liberties Union ("ACLU") is a 501(c)(4) non-profit, non-partisan organization that engages in public education and lobbying about the constitutional principles of liberty and equality. The ACLU has more than 500,000 members, including members in every state. The ACLU is incorporated in Washington, D.C. and has its principal place of business in New York City.

2

7. The American Civil Liberties Union Foundation ("ACLUF") is a 501(c)(3) organization that educates the public about civil-liberties issues and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State and has its principal place of business in New York City.

8. The New York Civil Liberties Union ("NYCLU") is a 501(c)(4) non-profit, non-partisan organization that functions as the ACLU affiliate in New York and that has as its mission the advancement and protection of civil liberties and civil rights. The NYCLU is incorporated in New York and has its principal place of business in New York City.

9. The New York Civil Liberties Union Foundation ("NYCLUF") is a 501(c)(3) non-profit, non-partisan organization whose mission is to defend civil rights and civil liberties and to preserve and extend constitutionally guaranteed rights to people whose rights have historically been denied. The NYCLUF provides counsel in lawsuits seeking to advance civil liberties and civil rights. It is incorporated in Delaware and has its principal place of business in New York City.

**DEFENDANTS**

10. Defendant James R. Clapper is the Director of National Intelligence ("DNI"). DNI Clapper has ultimate authority over the activities of the intelligence community.

11. Defendant Lt. Gen. Keith B. Alexander is the Director of the National Security Agency ("NSA") and the Chief of the Central Security Service. Lt. Gen. Alexander has ultimate authority for supervising and implementing all operations and functions of the NSA, the agency responsible for conducting surveillance authorized by the challenged law.

12. Defendant Charles T. Hagel is the Secretary of Defense. Secretary Hagel has ultimate authority over the Department of Defense, of which the NSA is a component.

3

13.  Defendant Eric H. Holder is the Attorney General of the United States. Attorney General Holder has ultimate authority over the Department of Justice and the Federal Bureau of Investigation ("FBI") and is responsible for overseeing aspects of the challenged statute.

14.  Defendant Robert S. Mueller III is the Director of the FBI and is responsible for applications made to the FISC under Section 215 of the Patriot Act.

## BACKGROUND

### The Foreign Intelligence Surveillance Act

15.  In 1978, Congress enacted the Foreign Intelligence Surveillance Act ("FISA") to govern surveillance conducted for foreign-intelligence purposes. The statute created the Foreign Intelligence Surveillance Court ("FISC"), a court composed of seven (now eleven) federal district court judges, and empowered the court to grant or deny government applications for surveillance orders in foreign-intelligence investigations.

16.  Congress enacted FISA after years of in-depth congressional investigation by the committees chaired by Senator Frank Church and Representative Otis Pike, which revealed that the Executive Branch had engaged in widespread warrantless surveillance of United States citizens—including journalists, activists, and members of Congress—"who engaged in no criminal activity and who posed no genuine threat to the national security."

### Section 215 of the Patriot Act

17.  Section 215 of the Patriot Act is often referred to as FISA's "business records" provision. When originally enacted in 1998, this provision permitted the FBI to apply to the FISC for an order to obtain business records of hotels, motels, car and truck rental agencies, and storage rental facilities.

18. Section 215 broadened this authority by eliminating any limitation on the types of businesses or entities whose records may be seized. In addition, Section 215 expanded the scope of the items that the FBI may obtain using this authority from "records" to "any tangible things (including books, records, papers, documents, and other items)."

19. Section 215 also relaxed the standard that the FBI is required to meet to obtain an order to seize these records. Previously, FISA required the FBI to present to the FISC "specific and articulable facts giving reason to believe that the person to whom the records pertain [was] a foreign power or an agent of a foreign power." In its current form, Section 215 requires only that the records or things sought be "relevant" to an authorized investigation "to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities."

20. Production orders issued under Section 215 are accompanied by gag orders generally forbidding recipients from revealing "that the Federal Bureau of Investigation has sought or obtained tangible things." Recipients may challenge gag orders "[n]ot less than 1 year after the date of the issuance of the production order." If a recipient challenges a gag order, the FISC must treat the government's claim "that disclosure may endanger the national security of the United States or interfere with diplomatic relations . . . as conclusive."

21. For the past several years, members of Congress have been warning the public that the Executive Branch was exceeding the limits of the Patriot Act. In 2009, Senator Russ Feingold stated during a hearing that "there . . . is information about the use of Section 215 orders that I believe Congress and the American people deserve to know," adding later that "Section 215 has been misused." In 2011, Senator Ron Wyden declared, "When the American people find out how their government has secretly interpreted the Patriot Act, they will be

5

stunned and they will be angry." Similarly, Senator Mark Udall protested that "Americans would be alarmed if they knew how this law is being carried out."

22. On June 5, 2013, *The Guardian* disclosed that, under Section 215, the NSA has been acquiring the metadata for every phone call made or received by customers of VBNS "on an ongoing daily basis."

23. Since the disclosure of the VBNS order last week and the government's official acknowledgement of it, the outcry in Congress has increased sharply. Representative Jim Sensenbrenner, an author of the Patriot Act and chairman of the House Judiciary Committee at the time of Section 215's passage, called the Section 215 surveillance program "an abuse of that law." He wrote that, "based on the scope of the released order, both the administration and the FISA court are relying on an unbounded interpretation of the act that Congress never intended."

## PLAINTIFFS' ALLEGATIONS

24. Plaintiffs are non-profit organizations that engage in public education, lobbying, and pro bono litigation upholding the civil rights and liberties guaranteed by the Constitution. Collectively, Plaintiffs have more than 500,000 members, including members in every state. Plaintiffs' employees routinely communicate by phone with each other as well as with journalists, current and potential clients, legislators and legislative staff, and members of the public. These communications relate to Plaintiffs' advocacy, representation of clients, and efforts to lobby Congress. Plaintiffs' communications are sensitive and often privileged.

25. For example, Plaintiffs frequently place or receive phone calls from individuals relating to potential legal representation in suits against the federal government or state governments. Often, the mere fact that Plaintiffs have communicated with these individuals is sensitive or privileged.

26. In ongoing litigation, Plaintiffs often communicate with potential witnesses, informants, or sources who regard the fact of their association or affiliation with Plaintiffs as confidential. Particularly in their work relating to national security, access to reproductive services, racial discrimination, the rights of immigrants, and discrimination based on sexual orientation and gender identity, Plaintiffs' work often depends on their ability to keep even the fact of their discussions with certain individuals confidential.

27. Similarly, Plaintiffs often communicate with government and industry whistleblowers, lobbyists, journalists, and possible advocacy partners who consider the confidentiality of their associations with Plaintiffs essential to their work.

28. Plaintiffs ACLU and ACLUF are current customers of Verizon Business Network Services Inc. ("VBNS") and Verizon Wireless. VBNS provides the ACLU's and ACLUF's wired communications, including their landlines and internet connection. Verizon Wireless provides their wireless communications, including their mobile phones.

29. Plaintiff NYCLU was a customer of VBNS until early April 2013. Until that time, VBNS provided the NYCLU's wired communications, including their landlines.

30. On June 5, 2013, *The Guardian* published a FISC order directing VBNS to produce to the National Security Agency "on an ongoing daily basis . . . all call detail records or 'telephony metadata'" of its customers' calls, including those "wholly within the United States." Secondary Order at 2, *In re Application of the FBI for an Order Requiring the Prod. of Tangible Things from Verizon Bus. Network Servs., Inc. on Behalf of MCI Commc'n Servs., Inc. d/b/a Verizon Bus. Servs.*, No. BR 13-80 (FISC Apr. 25, 2013), *available at* http://bit.ly/11FY393. The VBNS order was issued on April 25, 2013 and expires on July 19, 2013. The order was issued ex parte, and there is no procedure for Plaintiffs to challenge it in the FISC.

31. In the few days since *The Guardian* disclosed the VBNS order, government officials have revealed more about the government's surveillance under Section 215. On June 6, Defendant Clapper officially acknowledged the authenticity of the VBNS order and disclosed details about the broader program supported by the FISC's orders issued under Section 215. Among other things, he stated that: "[t]he judicial order that was disclosed in the press is used to support a sensitive intelligence collection operation"; "[t]he only type of information acquired under the Court's order is telephony metadata, such as telephone numbers dialed and length of calls"; and "[t]he [FISC] reviews the program approximately every 90 days."

32. The following day, President Barack Obama also commented publicly on the Section 215 order. Like Defendant Clapper, the President acknowledged that the intelligence community is tracking phone numbers and the durations of calls.

33. Members of the congressional intelligence committees have confirmed that the order issued to VBNS was but a single, three-month order in a much broader, seven-year program that the government has relied upon to collect the telephone records of all Americans. Senator Dianne Feinstein has stated that "this is the exact three-month renewal of what has been the case for the past seven years. This renewal is carried out by the [FISC] under the business records section of the Patriot Act." Senator Saxby Chambliss has likewise stated that "[t]his has been going on for seven years."

34. News reports since the disclosure of the VBNS order indicate that the mass acquisition of Americans' call details extends beyond customers of VBNS, encompassing all wireless and landline subscribers of the country's three largest phone companies. *See* Siobhan Gorman et al., *U.S. Collects Vast Data Trove*, Wall St. J., June 7, 2013, http://on.wsj.com/11uD0ue ("The arrangement with Verizon, AT&T and Sprint, the country's

three largest phone companies means, that every time the majority of Americans makes a call, NSA gets a record of the location, the number called, the time of the call and the length of the conversation, according to people familiar with the matter. . . . AT&T has 107.3 million wireless customers and 31.2 million landline customers. Verizon has 98.9 million wireless customers and 22.2 million landline customers while Sprint has 55 million customers in total."); Siobhan Gorman & Jennifer Valentino-DeVries, *Government Is Tracking Verizon Customers' Records*, Wall St. J., June 6, 2013, http://on.wsj.com/13mLm7c ("The National Security Agency is obtaining a complete set of phone records from all Verizon U.S. customers under a secret court order, according to a published account and former officials.").

35.     As customers of VBNS, Plaintiffs ACLU and ACLUF are covered by the now-public order of the FISC requiring VBNS to turn over *all* of its customers' call records—including all of Plaintiffs' call records—on an ongoing basis. Upon information and belief, Plaintiff NYCLU was covered by a similar order prior to the expiration of their contract with VBNS. Also upon information and belief, Plaintiffs ACLU and ACLUF are covered by a similar order directed to Verizon Wireless. The information collected includes Plaintiffs' numbers, the numbers of their contacts, the time and duration of every single call they placed or received, and the location of Plaintiffs and their contacts when talking on mobile phones. This information could readily be used to identify those who contact Plaintiffs for legal assistance or to report human-rights or civil-liberties violations, as well as those whom Plaintiffs contact in connection with their work. The fact that the government is collecting this information is likely to have a chilling effect on people who would otherwise contact Plaintiffs.

## CAUSES OF ACTION

36. The Mass Call Tracking exceeds the authority granted by 50 U.S.C. § 1861, and thereby violates 5 U.S.C. § 706.

37. The Mass Call Tracking violates the First Amendment to the Constitution.

38. The Mass Call Tracking violates the Fourth Amendment to the Constitution.

## PRAYER FOR RELIEF

WHEREFORE the plaintiffs respectfully request that the Court:

1. Exercise jurisdiction over Plaintiffs' Complaint;

2. Declare that the Mass Call Tracking violates 50 U.S.C. § 1861 and 5 U.S.C. § 706;

3. Declare that the Mass Call Tracking violates the First and Fourth Amendments to the Constitution;

4. Permanently enjoin Defendants from continuing the Mass Call Tracking under the VBNS order or any successor thereto;

5. Order Defendants to purge from their possession all of the call records of Plaintiffs' communications in their possession collected pursuant to the Mass Call Tracking;

6. Award Plaintiff fees and costs pursuant to 28 U.S.C. § 2412;

7. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Arthur N. Eisenberg (AE-2012)
Christopher T. Dunn (CD-3991)
New York Civil Liberties Union
  Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300

Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
Brett Max Kaufman (BK-2827)
Patrick Toomey (PT-1452)
Catherine Crump (CC-4067)
American Civil Liberties Union
  Foundation

Fax: (212) 607-3318  
aeisenberg@nyclu.org

125 Broad Street, 18th Floor  
New York, NY 10004  
Phone: (212) 549-2500  
Fax: (212) 549-2654  
jjaffer@aclu.org

June 11, 2013