UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; NEW YORK CIVIL LIBERTIES UNION; and NEW YORK CIVIL LIBERTIES UNION FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES R. CLAPPER, in his official capacity as Director of National Intelligence; KEITH B. ALEXANDER, in his official capacity as Director of the National Security Agency and Chief of the Central Security Service; CHARLES T. HAGEL, in his official capacity as Secretary of Defense; ERIC H. HOLDER, in his official capacity as Attorney General of the United States; and ROBERT S. MUELLER III, in his official capacity as Director of the Federal Bureau of Investigation, <br><br> Defendants. | **DECLARATION OF STEVEN R. SHAPIRO** <br><br> Case No. 13-cv-03994 (WHP) <br><br> **ECF CASE** |

**DECLARATION OF STEVEN R. SHAPIRO**

I, Steven R. Shapiro, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am the Legal Director of the American Civil Liberties Union ("ACLU"), which is a plaintiff in this case. I submit this declaration in support of the plaintiffs' motion for a preliminary injunction. I base this declaration on my personal knowledge and on information provided to me by my staff.

2.      For purposes of this declaration, I use "ACLU" to refer to both the American

Civil Liberties Union and the American Civil Liberties Union Foundation. The American Civil

Liberties Union is a 501(c)(4) nonprofit and nonpartisan organization with approximately

500,000 members nationwide dedicated to the principles of liberty and equality embodied in the

Constitution and our nation's civil-rights laws. It engages in legislative lobbying, public

education, and public advocacy. The American Civil Liberties Union Foundation is a 501(c)(3)

organization that provides legal representation free of charge to individuals and groups in civil-

rights and civil-liberties cases. It also engages in public education and advocacy.

3.      I have served as the ACLU's legal director since 1993. In that capacity, I

supervise over 100 lawyers, paralegals, and support personnel who work on a wide range of

issues, including—to name just a few—national security, police accountability, reproductive

rights, LGBT rights, and immigrants' rights.

4.      Given the controversial nature of much of the ACLU's work, the organization has

a strong interest in protecting not only the content of our communications with clients, sources,

and allies, but often the very fact of those communications. Many of these communications occur

by telephone. For example:

- ACLU lawyers frequently place or receive telephone calls from individuals
  relating to potential legal representation in suits against the federal government.
  Among others, this includes calls from prospective whistleblowers who wish
  either to inform the ACLU of government misconduct or to seek legal counsel
  about their decision to expose that misconduct. These individuals often insist that
  the very fact of their communication with the ACLU be kept confidential.

- Protecting the confidentiality of a client's identity is also a paramount concern in cases where the client has been granted judicial permission to proceed pseudonymously. In such cases, any disclosure of the client's identity is generally limited by a protective order that is then subject to judicial enforcement.

- In addition, ACLU staff has had numerous conversations over the years with government sources, including members of the executive and legislative branches, in furtherance of the ACLU's advocacy efforts. The ground rules for these discussions can include a promise of confidentiality, which would be breached if it became known that the sources were talking to the ACLU, particularly if the fact or timing of those conversations would reveal the likely subject matter of the communications.

- As a nonpartisan organization, the ACLU forms alliances on discrete issues with other organizations across the ideological spectrum. The terms of the cooperation sometimes include a mutual understanding that the collaboration will be kept confidential.

- Finally, ACLU staff speak by telephone with ACLU members and donors. These conversations relate to the ACLU's work, the relationship that members and donors have with the organization, and other topics.

5.      The ACLU can and does take measures to protect the confidentiality of sensitive communications from surveillance by the government or other third parties, including the use of encryption software, when deemed appropriate in the exercise of our professional judgment. Based on conversations with staff, however, my understanding is that current technology does not allow us to shield our telephony metadata from the kind of surveillance at issue here. Thus,

to our knowledge, there is no way to protect the identity of persons communicating by telephone

with the ACLU through Verizon, even in circumstances where that information is especially

sensitive, so long as the challenged surveillance program continues.

6.      Since 2007, the ACLU has received its telephone service from Verizon Business

Network Services, Inc. ("Verizon"). As of the filing of this declaration, the ACLU continues to

receive its telephone service from Verizon.

7.      Prior to the disclosures about the NSA's call-tracking program, the ACLU had no

knowledge that its telephony metadata was being acquired and retained for years by the

government. The ACLU's agreement with Verizon contains a paragraph that is labeled Customer

Consent to Use of Customer Proprietary Network Information ("CPNI"), which defines CPNI to

include, among other things, "information relating to the quantity, technical configuration, type,

destination, location, and amount of use of the telecommunications services Customer purchases

from Verizon, as well as related local and toll billing information, made available to Verizon

solely by virtue of Customer's relationship with Verizon." That provision further states,

"Verizon acknowledges that it has a duty, and Customer has a right, under federal and/or state

law to protect the confidentiality of Customer's CPNI." Elsewhere, the ACLU's agreement

provides that "Verizon will protect the confidentiality of Customer CPNI in accordance with

applicable laws, rules and regulations."

8.      The NSA program at issue in this case poses a real threat to the ability of the

ACLU to do its work. In my opinion, there is a genuine risk that people who would otherwise

speak on the telephone with the ACLU will refrain from doing so if they believe that the

government will be able to learn that they have been communicating with us. Given what we

understand about the government's surveillance program, I know of nothing we can do to protect those persons from this risk short of ceasing to speak with them on the telephone.

_Steven R. Shapiro_
STEVEN R. SHAPIRO

Dated: August 26, 2013