# Exhibit 2

TOP SECRET//SI//NOFORN

UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D. C.

IN RE APPLICATION OF THE FEDERAL
BUREAU OF INVESTIGATION FOR AN
ORDER REQUIRING THE PRODUCTION
OF TANGIBLE THINGS FROM ▮▮▮



Docket Number: BR

13 - 8 0

## PRIMARY ORDER

A verified application having been made by the Director of the Federal Bureau of

Investigation (FBI) for an order pursuant to the Foreign Intelligence Surveillance Act of

1978 (the Act), Title 50, United States Code (U.S.C.), § 1861, as amended, requiring the

TOP SECRET//SI//NOFORN

Derived from:   Pleadings in the above-captioned docket
Declassify on:  12 April 2038

TOP SECRET//SI//NOFORN

production to the National Security Agency (NSA) of the tangible things described below, and full consideration having been given to the matters set forth therein, the Court finds as follows:

1. There are reasonable grounds to believe that the tangible things sought are relevant to authorized investigations (other than threat assessments) being conducted by the FBI under guidelines approved by the Attorney General under Executive Order 12333 to protect against international terrorism, which investigations are not being conducted solely upon the basis of activities protected by the First Amendment to the Constitution of the United States. [50 U.S.C. § 1861(c)(1)]

2. The tangible things sought could be obtained with a subpoena duces tecum issued by a court of the United States in aid of a grand jury investigation or with any other order issued by a court of the United States directing the production of records or tangible things. [50 U.S.C. § 1861(c)(2)(D)]

3. The application includes an enumeration of the minimization procedures the government proposes to follow with regard to the tangible things sought. Such procedures are similar to the minimization procedures approved and adopted as binding by the order of this Court in Docket Number ███████ and its predecessors. [50 U.S.C. § 1861(c)(1)]

TOP SECRET//SI//NOFORN

Accordingly, the Court finds that the application of the United States to obtain the tangible things, as described below, satisfies the requirements of the Act and, therefore,

IT IS HEREBY ORDERED, pursuant to the authority conferred on this Court by the Act, that the application is GRANTED, and it is

FURTHER ORDERED, as follows:

(1)A.  The Custodians of Records of ███████████████ shall produce to NSA upon service of the appropriate secondary order, and continue production on an ongoing daily basis thereafter for the duration of this order, unless otherwise ordered by the Court, an electronic copy of the following tangible things:  all call detail records or "telephony metadata"[1] created by ████████████████

B.  The Custodian of Records of ████████████████████████

████████████████████████████████████

████████████████████████ shall produce to NSA upon service of the appropriate secondary order, and continue production on an ongoing daily basis

---

[1] For purposes of this Order "telephony metadata" includes comprehensive communications routing information, including but not limited to session identifying information (e.g., originating and terminating telephone number, International Mobile Subscriber Identity (IMSI) number, International Mobile station Equipment Identity (IMEI) number, etc.), trunk identifier, telephone calling card numbers, and time and duration of call. Telephony metadata does not include the substantive content of any communication, as defined by 18 U.S.C. § 2510(8), or the name, address, or financial information of a subscriber or customer.

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

thereafter for the duration of this order, unless otherwise ordered by the Court, an electronic copy of the following tangible things:  all call detail records or "telephony metadata" created by ▮▮▮ for communications (i) between the United States and abroad; or (ii) wholly within the United States, including local telephone calls. ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

(2)  With respect to any information the FBI receives as a result of this Order (information that is disseminated to it by NSA), the FBI shall follow as minimization procedures the procedures set forth in *The Attorney General's Guidelines for Domestic FBI Operations* (September 29, 2008).

(3)  With respect to the information that NSA receives as a result of this Order, NSA shall strictly adhere to the following minimization procedures:

A.  The government is hereby prohibited from accessing business record metadata acquired pursuant to this Court's orders in the above-captioned docket and its predecessors ("BR metadata") for any purpose except as described herein.

B.  NSA shall store and process the BR metadata in repositories within secure networks under NSA's control.[2]  The BR metadata shall carry unique markings such

---

[2] The Court understands that NSA will maintain the BR metadata in recovery back-up systems for mission assurance and continuity of operations purposes.  NSA shall ensure that any access

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

that software and other controls (including user authentication services) can restrict

access to it to authorized personnel who have received appropriate and adequate

training with regard to this authority.  NSA shall restrict access to the BR metadata to

authorized personnel who have received appropriate and adequate training.[3]

Appropriately trained and authorized technical personnel may access the BR metadata

to perform those processes needed to make it usable for intelligence analysis.  Technical

personnel may query the BR metadata using selection terms[4] that have not been RAS-

approved (described below) for those purposes described above, and may share the

results of those queries with other authorized personnel responsible for these purposes,

---

or use of the BR metadata in the event of any natural disaster, man-made emergency, attack, or
other unforeseen event is in compliance with the Court's Order.

[3] The Court understands that the technical personnel responsible for NSA's underlying
corporate infrastructure and the transmission of the BR metadata from the specified persons to
NSA, will not receive special training regarding the authority granted herein.



TOP SECRET//SI//NOFORN

but the results of any such queries will not be used for intelligence analysis purposes.

An authorized technician may access the BR metadata to ascertain those identifiers that

may be high volume identifiers. The technician may share the results of any such

access, *i.e.*, the identifiers and the fact that they are high volume identifiers, with

authorized personnel (including those responsible for the identification and defeat of

high volume and other unwanted BR metadata from any of NSA's various metadata

repositories), but may not share any other information from the results of that access for

intelligence analysis purposes. In addition, authorized technical personnel may access

the BR metadata for purposes of obtaining foreign intelligence information pursuant to

the requirements of subparagraph (3)C below.

C. NSA shall access the BR metadata for purposes of obtaining foreign

intelligence information only through contact chaining queries of the BR metadata as

described in paragraph 17 of the Declaration of ███████████, attached to the

application as Exhibit A, using selection terms approved as "seeds" pursuant to the

RAS approval process described below.[5] NSA shall ensure, through adequate and

---

[5] For purposes of this Order, "National Security Agency" and "NSA personnel" are defined as any employees of the National Security Agency/Central Security Service ("NSA/CSS" or "NSA") and any other personnel engaged in Signals Intelligence (SIGINT) operations authorized pursuant to FISA if such operations are executed under the direction, authority, or control of the Director, NSA/Chief, CSS (DIRNSA). NSA personnel shall not disseminate BR metadata outside the NSA unless the dissemination is permitted by, and in accordance with, the requirements of this Order that are applicable to the NSA.

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

appropriate technical and management controls, that queries of the BR metadata for

intelligence analysis purposes will be initiated using only a selection term that has been

RAS-approved.  Whenever the BR metadata is accessed for foreign intelligence analysis

purposes or using foreign intelligence analysis query tools, an auditable record of the

activity shall be generated.[6]

   (i)  Except as provided in subparagraph (ii) below, all selection terms to be

used as "seeds" with which to query the BR metadata shall be approved by any

of the following designated approving officials: the Chief or Deputy Chief,

Homeland Security Analysis Center; or one of the twenty specially-authorized

Homeland Mission Coordinators in the Analysis and Production Directorate of

the Signals Intelligence Directorate.  Such approval shall be given only after the

designated approving official has determined that based on the factual and

practical considerations of everyday life on which reasonable and prudent

persons act, there are facts giving rise to a reasonable, articulable suspicion (RAS)

that the selection term to be queried is associated with ███████████

███████████████████████

---

[6]  This auditable record requirement shall not apply to accesses of the results of RAS-approved
queries.



TOP SECRET//SI//NOFORN

7

TOP SECRET//SI//NOFORN

provided, however, that NSA's Office of General Counsel (OGC)



TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

shall first determine that any selection term reasonably believed to be used by a

United States (U.S.) person is not regarded as associated with ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ on the basis of activities that are protected by the

First Amendment to the Constitution.

(ii) Selection terms that are currently the subject of electronic surveillance

authorized by the Foreign Intelligence Surveillance Court (FISC) based on the

FISC's finding of probable cause to believe that they are used by ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ including those used by U.S. persons, may be

deemed approved for querying for the period of FISC-authorized electronic

surveillance without review and approval by a designated approving official.

The preceding sentence shall not apply to selection terms under surveillance



TOP SECRET//SI//NOFORN

9

TOP SECRET//SI//NOFORN

pursuant to any certification of the Director of National Intelligence and the Attorney General pursuant to Section 702 of FISA, as added by the FISA Amendments Act of 2008, or pursuant to an Order of the FISC issued under Section 703 or Section 704 of FISA, as added by the FISA Amendments Act of 2008.

(iii) A determination by a designated approving official that a selection term is associated with ████████████████████████████████████ ████████████████████████████████████ shall be effective for: one hundred eighty days for any selection term reasonably believed to be used by a U.S. person; and one year for all other selection terms.[9,10]

---

[9] The Court understands that from time to time the information available to designated approving officials will indicate that a selection term is or was associated with a Foreign Power only for a specific and limited time frame. In such cases, a designated approving official may determine that the reasonable, articulable suspicion standard is met, but the time frame for which the selection term is or was associated with a Foreign Power shall be specified. The automated query process described in the ████████ Declaration limits the first hop query results to the specified time frame. Analysts conducting manual queries using that selection term shall continue to properly minimize information that may be returned within query results that fall outside of that timeframe.



TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

(iv) Queries of the BR metadata using RAS-approved selection terms may occur either by manual analyst query or through the automated query process described below.[11] This automated query process queries the collected BR metadata (in a "collection store") with RAS-approved selection terms and returns the hop-limited results from those queries to a "corporate store." The corporate store may then be searched by appropriately and adequately trained personnel for valid foreign intelligence purposes, without the requirement that those searches use only RAS-approved selection terms. The specifics of the automated query process, as described in the ▮▮▮▮ Declaration, are as follows:



---

[11] This automated query process was initially approved by this Court in its ▮▮▮▮ 2012 Order amending docket number ▮▮▮▮

[12] As an added protection in case technical issues prevent the process from verifying that the most up-to-date list of RAS-approved selection terms is being used, this step of the automated process checks the expiration dates of RAS-approved selection terms to confirm that the approvals for those terms have not expired. This step does not use expired RAS-approved selection terms to create the list of "authorized query terms" (described below) regardless of whether the list of RAS-approved selection terms is up-to-date.

TOP SECRET//SI//NOFORN



D.   Results of any intelligence analysis queries of the BR metadata may be shared,

prior to minimization, for intelligence analysis purposes among NSA analysts, subject

to the requirement that all NSA personnel who receive query results in any form first



TOP SECRET//SI//NOFORN

receive appropriate and adequate training and guidance regarding the procedures and

restrictions for the handling and dissemination of such information.[15]  NSA shall apply

the minimization and dissemination requirements and procedures of Section 7 of

United States Signals Intelligence Directive SP0018 (USSID 18) issued on January 25,

2011, to any results from queries of the BR metadata, in any form, before the

information is disseminated outside of NSA in any form.  Additionally, prior to

disseminating any U.S. person information outside NSA, the Director of NSA, the

Deputy Director of NSA, or one of the officials listed in Section 7.3(c) of USSID 18 (i.e.,

the Director of the Signals Intelligence Directorate (SID), the Deputy Director of the SID,

the Chief of the Information Sharing Services (ISS) office, the Deputy Chief of the ISS

office, and the Senior Operations Officer of the National Security Operations Center)

must determine that the information identifying the U.S. person is in fact related to

counterterrorism information and that it is necessary to understand the

counterterrorism information or assess its importance.[16]  Notwithstanding the above

requirements, NSA may share results from intelligence analysis queries of the BR

metadata, including U.S. person identifying information, with Executive Branch

---

[15] In addition, the Court understands that NSA may apply the full range of SIGINT analytic
tradecraft to the results of intelligence analysis queries of the collected BR metadata.

[16] In the event the Government encounters circumstances that it believes necessitate the
alteration of these dissemination procedures, it may obtain prospectively-applicable
modifications to the procedures upon a determination by the Court that such modifications are
appropriate under the circumstances and in light of the size and nature of this bulk collection.

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

personnel (1) in order to enable them to determine whether the information contains

exculpatory or impeachment information or is otherwise discoverable in legal

proceedings or (2) to facilitate their lawful oversight functions.

E.  BR metadata shall be destroyed no later than five years (60 months) after its

initial collection.

F.  NSA and the National Security Division of the Department of Justice

(NSD/DoJ) shall conduct oversight of NSA's activities under this authority as outlined

below.

(i)  NSA's OGC and Office of the Director of Compliance (ODOC) shall

ensure that personnel with access to the BR metadata receive appropriate and

adequate training and guidance regarding the procedures and restrictions for

collection, storage, analysis, dissemination, and retention of the BR metadata and

the results of queries of the BR metadata.  NSA's OGC and ODOC shall further

ensure that all NSA personnel who receive query results in any form first receive

appropriate and adequate training and guidance regarding the procedures and

restrictions for the handling and dissemination of such information.  NSA shall

maintain records of all such training.[17]  OGC shall provide NSD/DoJ with copies

---

[17] The nature of the training that is appropriate and adequate for a particular person will
depend on the person's responsibilities and the circumstances of his access to the BR metadata
or the results from any queries of the metadata.

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

of all formal briefing and/or training materials (including all revisions thereto) used to brief/train NSA personnel concerning this authority.

(ii)  NSA's ODOC shall monitor the implementation and use of the software and other controls (including user authentication services) and the logging of auditable information referenced above.

(iii)  NSA's OGC shall consult with NSD/DoJ on all significant legal opinions that relate to the interpretation, scope, and/or implementation of this authority.  When operationally practicable, such consultation shall occur in advance; otherwise NSD shall be notified as soon as practicable.

(iv)  At least once during the authorization period, NSA's OGC, ODOC, NSD/DoJ, and any other appropriate NSA representatives shall meet for the purpose of assessing compliance with this Court's orders.  Included in this meeting will be a review of NSA's monitoring and assessment to ensure that only approved metadata is being acquired.  The results of this meeting shall be reduced to writing and submitted to the Court as part of any application to renew or reinstate the authority requested herein.

(v)  At least once during the authorization period, NSD/DoJ shall meet with NSA's Office of the Inspector General to discuss their respective oversight responsibilities and assess NSA's compliance with the Court's orders.

TOP SECRET//SI//NOFORN

15

TOP SECRET//SI//NOFORN

(vi)  At least once during the authorization period, NSA's OGC and NSD/DoJ shall review a sample of the justifications for RAS approvals for selection terms used to query the BR metadata.

(vii)  Prior to implementation, all proposed automated query processes shall be reviewed and approved by NSA's OGC, NSD/DoJ, and the Court.

G.  Approximately every thirty days, NSA shall file with the Court a report that includes a discussion of NSA's application of the RAS standard, as well as NSA's implementation of the automated query process.  In addition, should the United States seek renewal of the requested authority, NSA shall also include in its report a description of any significant changes proposed in the way in which the call detail records would be received from the Providers and any significant changes to the controls NSA has in place to receive, store, process, and disseminate the BR metadata.

Each report shall include a statement of the number of instances since the preceding report in which NSA has shared, in any form, results from queries of the BR metadata that contain United States person information, in any form, with anyone outside NSA.  For each such instance in which United States person information has been shared, the report shall include NSA's attestation that one of the officials authorized to approve such disseminations determined, prior to dissemination, that the information was related to counterterrorism information and necessary to understand

TOP SECRET//SI//NOFORN

TOP SECRET//SI//NOFORN

counterterrorism information or to assess its importance.

This authorization regarding ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ expires on the _19th_ day

of July, 2013, at 5:00 p.m., Eastern Time.

Signed ___04-25-2013 P02:26___ Eastern Time
      Date     Time

**ROGER VINSON**
Judge, United States Foreign
Intelligence Surveillance Court

TOP SECRET//SI//NOFORN

17