UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; NEW YORK CIVIL LIBERTIES UNION; and NEW YORK CIVIL LIBERTIES UNION FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES R. CLAPPER, in his official capacity as Director of National Intelligence; KEITH B. ALEXANDER, in his official capacity as Director of the National Security Agency and Chief of the Central Security Service; CHARLES T. HAGEL, in his official capacity as Secretary of Defense; ERIC H. HOLDER, in his official capacity as Attorney General of the United States; and ROBERT S. MUELLER III, in his official capacity as Director of the Federal Bureau of Investigation,<br><br>Defendants. | ECF Case<br><br>Case No. 13 Civ. 3994 (WHP) |

**BRIEF *AMICUS CURIAE* OF
CONGRESSMAN F. JAMES SENSENBRENNER, JR.
IN SUPPORT OF PLAINTIFFS**

                                        David Greene (Corrected *Pro Hac Vice* pending)
                                        ELECTRONIC FRONTIER FOUNDATION
                                        815 Eddy Street
                                        San Francisco, CA 94109
                                        Tel: (415) 436-9333
                                        Email: davidg@eff.org

                                        *Counsel for Amicus Curiae*
                                        *Congressman F. James Sensenbrenner, Jr.*

**TABLE OF CONTENTS**

INTEREST OF AMICUS ........................................................................................................ 1

I.      INTRODUCTION ........................................................................................................ 1

II.     CONGRESS AUTHORIZED THE COLLECTION OF DOCUMENTS AND OTHER TANGIBLE THINGS ONLY UPON A SHOWING THAT THE ITEMS WILL BE RELEVANT TO AN AUTHORIZED INVESTIGATION ................................................. 2

III.    CONGRESS DID NOT INTEND TO AUTHORIZE THE COLLECTION OF DATA OF EVERY TELEPHONE CALL MADE TO OR FROM THE UNITED STATES, THUS CAPTURING THE INFORMATION, AND VIOLATING THE PRIVACY, OF MILLIONS OF INNOCENT AMERICANS ................................................................... 4

IV.    DEFENDANTS' CLAIM THAT CONGRESS IMPLICITY RATIFIED THE PROGRAM MUST BE REJECTED BECAUSE THERE IS NO EVIDENCE OF EXTENSIVE CONSIDERATION OF THE PROGRAM OR A BROAD CONSENSUS THAT IT WAS LEGAL ............................................................................. 7

V.     CONCLUSION ......................................................................................................... 10

## TABLE OF AUTHORITIES

**Federal Cases**

*Albemarle Paper Co. v. Moody*,
 422 U.S. 405 (1975) ..................................................................................................8

*Astoria Federal Savings & Loan Ass'n v. Solimino*,
 501 U.S. 104 (1991) ..................................................................................................6

*Bowman Dairy Co. v. United States*,
 341 U.S. 214 (1951) ...............................................................................................4, 5

*Butterbaugh v. Dep't of Justice*,
 336 F.3d 1332 (Fed. Cir. 2003) ................................................................................8

*Cheney v. United States District Court for the District of Columbia*,
 542 U.S. 367 (2004) ..................................................................................................5

*Edmonds v. Compagnie Generale Transatlantique*,
 443 U.S. 256 (1979) ..................................................................................................5

*Forest Grove Sch. Dist. v. T.A.*,
 557 U.S. 230 (2009) ..................................................................................................8

*Jama v. Immigration and Customs Enforcement*,
 543 U.S. (2005) .........................................................................................................8

*Lorillard v. Pons*,
 434 U.S. 575 (1978) ..................................................................................................8

*MCI Telecommunications Corp. v. AT&T*,
 512 U.S. 218 (1994) ..................................................................................................6

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*,
 474 U.S. 494 (1986) ..................................................................................................5

*Nat'l Labor Rel. Bd. v. Gullett Gin Co.*,
 340 U.S. 361 (1951) ..................................................................................................8

*United States v. Powell*,
 379 U.S. 48 (1964) ....................................................................................................8

*Whitman v. American Trucking Ass'ns, Inc.*,
 531 U.S. 457 (2001) ..................................................................................................6

**Federal Statutes**

50 U.S.C. § 1842 ................................................................................................................6

50 U.S.C. § 1861 ........................................................................................................1, 3, 7

**Legislative Materials**

H.R. Rep. No. 107-236 (2001) ............................................................................................3

Pub. L. No. 107-56, 115 Stat. 272 ......................................................................................2

USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 106,
    120 Stat. 192 ..............................................................................................................3

**INTEREST OF *AMICUS***

*Amicus curiae* F. James Sensenbrenner, Jr. is a Member of Congress who was the author the USA PATRIOT ("Patriot Act") in its original passage in 2001, and supported its revision in 2006 and its reauthorizations in 2009 and 2011. Rep. Sensenbrenner has represented the Fifth Congressional District of Wisconsin since 1978. He is a long-serving member of the House Judiciary Committee and the Committee on Science and Technology. Rep. Sensenbrenner was chairman of the judiciary committee when the United States was attacked on September 11, 2001. Five days later, he received a first draft of the Patriot Act from the Justice Department. Firmly believing that that original draft granted the government too much investigative power, he asked then-House Speaker Dennis Hastert for time to redraft the legislation. Following numerous meetings and negotiations with the White House, the FBI, and the intelligence community, Rep. Sensenbrenner authored a revised version of the Act that was ultimately adopted as law. Rep. Sensenbrenner also voted to amend the Patriot Act in 2006 and voted to reauthorize certain provisions of the law, including Section 215, in 2009 and 2011.

**I.   INTRODUCTION**

The Defendants attempt to justify their practice of collecting the records of every telephone call made to or from the United States, including purely domestic calls, by claiming that Congress intended to authorize precisely such a program when it enacted and reauthorized Section 215 of the Act, 50 U.S.C. § 1861 ("Section 215"). Defs' Mot. to Dismiss (ECF No. 33) at 21-28. But Congress intended no such thing.

*Amicus curiae* is a Member of Congress who was the author of the original Patriot Act, in 2001, and supported its revision in 2006 and its reauthorizations in 2009 and 2011. *Amicus* agrees with Defendants that in enacting Section 215, Congress granted the Executive branch

1

broad investigative powers relating to investigations of suspected foreign terrorist activities. However, *amicus* vehemently disputes that Congress intended to authorize the program challenged by this lawsuit, namely, the unprecedented, massive collection of the telecommunications data of millions of innocent Americans. Indeed, the unfocused dragnet undertaken by Defendants is exactly the type of unrestrained surveillance Congress, including *amicus*, tried to prevent.

*Amicus* thus urges the Court to find that the bulk data collection program challenged in this lawsuit is not authorized by Section 215 or any other provision of law.

## II. CONGRESS AUTHORIZED THE COLLECTION OF DOCUMENTS AND OTHER TANGIBLE THINGS ONLY UPON A SHOWING THAT THE ITEMS WILL BE RELEVANT TO AN AUTHORIZED INVESTIGATION

The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001 was adopted by Congress shortly after the September 11, 2001 terrorist attacks. Pub. L. No. 107-56, 115 Stat. 272. Among the Act's 17 provisions was Section 215, the business records provision, which authorized intelligence agencies to apply for an order from the Foreign Intelligence Surveillance Court "requiring the production of any tangible things (including books, records, papers, documents, and other items)." *Id*. § 215. However, intelligence agencies were not given unbounded record-collecting authority. Instead, records could be obtained only if they were "sought for an authorized investigation." *Id*.

In imposing this limitation, the authors intended that the ability to collect such records would be confined to the situations in which the information was *relevant* to an authorized investigation. *Amicus* Rep. Sensenbrenner was chairman of the House Judiciary Committee during the debates over the passage of the Act and was the author of the version that was ultimately passed. Rep. Sensenbrenner's statements in the report for the House bill that became

2

Section 215 made it clear that such an order could be obtained only upon a showing to the FISC that "the records *are relevant to an ongoing foreign intelligence investigation*." H.R. Rep. No. 107-236, pt. 1, at 61 (2001) (emphasis in original).

To put any doubts to rest, the relevancy requirement was expressly incorporated into Section 215 when the law was re-authorized in 2006. Pub. L. No. 107-56, 115 Stat. 272. The "sought for an authorized investigation" language was replaced by a requirement that the government establish "reasonable grounds to believe that the tangible things sought are relevant to an authorized investigation (other than a threat assessment)." USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 106, 120 Stat. 192, 196. Other revisions to the bill shed light on what Congress meant by "relevant to an authorized investigation." Records sought will be considered "presumptively relevant to an authorized investigation" if the government demonstrates that the records pertain to "(i) a foreign power or an agent of a foreign power; (ii) the activities of a suspected agent of a foreign power who is the subject of such authorized investigation; or (iii) an individual in contact with, or known to, a suspected agent of a foreign power who is the subject of such authorized investigation." 50 U.S.C. § 1861(b)(2)(A).

Notably *amicus* and his colleagues in Congress required that the records sought be relevant to "*an* authorized investigation," rather than relevant to general or omnibus efforts to combat terrorism. Congress thus required intelligence agencies to establish a specific link between the records sought and a specific, individual investigation.

### III. CONGRESS DID NOT INTEND TO AUTHORIZE THE COLLECTION OF DATA OF EVERY TELEPHONE CALL MADE TO OR FROM THE UNITED STATES, THUS CAPTURING THE INFORMATION, AND VIOLATING THE PRIVACY, OF MILLIONS OF INNOCENT AMERICANS

The parties can argue over the dictionary and legal definitions of the words "relevance" and "an." But regardless of how those words are defined, one thing is clear: *amicus*, and the other Members of Congress who enacted Section 215, did not intend to authorize the program at issue in this lawsuit or any program of a comparable scope.

*Amicus* does not dispute that "relevance" is customarily given a broad meaning, and that he and his colleagues in Congress were aware of this broad meaning when they enacted and reauthorized Section 215. Nor does *amicus* dispute that Section 215 was intended to create a "sufficiently flexible" standard. *See* Defs' Mot. to Dismiss at 24. But there is no suggestion in any legal precedent or in any statements in the legislative history that the relevance standard could justify the ongoing collection of the records of every telephone call made to or by every person on American soil, the vast majority of which Defendants concede will not be related even remotely to any terrorist activities.

To the contrary, *amicus* understood that "relevance" was commonly construed by the Supreme Court as a *limiting* factor that specifically prevented the bulk collection of records, even on a much smaller scale, on the belief that investigators might find the information useful at some point in the future. For example, in *Bowman Dairy Co. v. United States*, 341 U.S. 214, 218 (1951), the defendants obtained a subpoena *duces tecum* that required the government attorneys prosecuting an antitrust case to produce, among other things, all documents which were "relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants." The Supreme Court rejected that part of the subpoena as an improper "fishing expedition to see what may turn up,"

4

despite the expansive reach of Federal Rule of Criminal Procedure 17(c). *Id.* at 221. In the civil discovery context, the Supreme Court sharply criticized as "anything but appropriate" a subpoena containing numerous "all documents" requests, characterizing it as seeking "everything under the sky." *Cheney v. United States Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 387-88 (2004).[1]

In these and all other cases, the Court has looked at relevance in relation to the subject matter at issue.[2] But Defendants here, without citing to any supporting authority, offer an unprecedented and dangerous version of "relevance": records are also relevant "if there is reason to believe [the business records] are necessary to the application of investigative techniques that will advance its purposes." Defs' Mot. to Dismiss at 24. Thus, Defendants claim they can collect millions of records that they know are not *pertinent* or *related* or *connected* to any terrorist activities, and retain those records for five years, because it may be necessary at some point within those five years to analyze those records to see if they contain any links to terrorists. Defendants maintain this claim even though they concede that even third degree connections to terrorists will be found in only a miniscule subset of the records collected. Defs' Mot. to Dismiss at 6 ("Therefore, 'only a small fraction of the records are ever reviewed.'") The vast majority of the records collected will have no relation to the investigation of terrorism at all. This collection of millions of unrelated records is built in to the mass call collection program.

---

[1] The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) (quoting *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266-67 (1979)).

[2] Defendants, quoting one dissenting senator, contend that Congress specifically rejected proposals that would have required the records to be relevant to specific individuals suspected of terrorist activities. Defs' Mot. to Dismiss at 24 n.13. Regardless of whether this is true – the words of the statute should be interpreted by what they say, not by what words were not enacted – it is not support for Defendants' theory that subject matter relevance, as distinct from a connection to an individual terrorist, is not required.

Defendants' theory of "relevance" is simply beyond any reasonable understanding of the word. And it certainly is not what *amicus* intended the word to mean.

Indeed, Defendants concede that the program is unprecedented in its scope. Defs' Mot. to Dismiss at 24. Even if Section 215 granted intelligence agencies enhanced powers with respect to terrorism investigations, Congress cannot be said to have implicitly authorized a program that reaches so much father than any program previously approved by any court in any context. *See Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions — it does not . . . hide elephants in mouseholes."); *MCI Telecommunications Corp. v. AT&T*, 512 U.S. 218, 231 (1994) (explaining that conferral of authority to "modify" rates was not a cryptic conferral of authority to make filing of rates voluntary).

Defendants claim that the massive scope of this program is merely a product of the unique interaction of interconnected telecommunications data and terrorism investigations. Defendants dispute that their interpretation of Section 215 grants it unbounded investigatory powers because similar bulk collection of other data sets, such as medical records, would not be authorized by Section 215. *Id*. ("Ordinarily, therefore, bulk collection of such records would not meet the 'relevance' standard."). However, Congress addressed the special need for telecommunications data in foreign intelligence and international terrorism investigations by providing separate procedures for the use of pen register and trap-and-trace devices, which are designed specifically to gather such data. *See* 50 U.S.C. § 1842. If the Defendants' interpretation of Section 215 is correct, these provisions are rendered superfluous. *See Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) (explaining that statutes should be construed "so as to avoid rendering superfluous" any statutory language).

Moreover, Defendants' interpretation of Section 215 renders numerous other provisions of the USA PATRIOT Act as mere surplusage. As discussed above, certain categories of information are presumed to be "relevant" for the purposes of Section 215. *See* 50 U.S.C. § 1861(b)(2)(A)(i)-(iii). If the meaning of "relevant" is as "flexible" as Defendants contend, then Congress wasted its time in articulating these more specific and focused categories.

Defendants do not explain why Congress would have enacted such meaningless provisions. The bulk data collection program is unbounded in its scope. The NSA is gathering on a daily basis the details of every call that every American makes, as well as every call made by foreigners to or from the United States. How can every call that every American makes or receives be relevant to a specific investigation?

## IV. DEFENDANTS' CLAIM THAT CONGRESS IMPLICITY RATIFIED THE PROGRAM MUST BE REJECTED BECAUSE THERE IS NO EVIDENCE OF EXTENSIVE CONSIDERATION OF THE PROGRAM OR A BROAD CONSENSUS THAT IT WAS LEGAL

Defendants claim that Congress "legislatively ratified" a construction of Section 215 under which the mass call-tracking program was permitted by reauthorizing Section 215 after being notified about the details of the program. This claim is founded on the assertion that a "classified briefing paper, explaining that the Government and the FISC had interpreted Section 215 to authorize the bulk collection of telephony metadata, was provided to the House and Senate Intelligence Committees and made available for review, as well, by all Members of Congress." Defs' Mot. to Dismiss at 27.

Defendants vastly understate the quantum of consensus required for a court to find implied Congressional ratification of a statutory interpretation. Implied Congressional ratification is not appropriate merely upon a showing that Congress was notified about an interpretation of the statute. Rather, it will be found only where Congress both reenacted a statute

7

without change, and did so where the specific interpretation of the statute was broad and unquestioned. *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 349 (2005); *United States v. Powell*, 379 U.S. 48, 55 n.13 (1964). The required broad and unquestioned interpretation may be established by evidence that "Congress considered [the interpretation] in great detail," *Nat'l Labor Rel. Bd. v. Gullett Gin Co.*, 340 U.S. 361, 366 (1951), specifically evidence of "[e]xtensive hearings, repeated efforts at legislative correction, and public controversy." *Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1342 (Fed. Cir. 2003). Or it may be established by a broad unanimity of judicial decisions. In *Jama*, the Supreme Court declined to find ratification even though Congress reenacted the legislation after two Court of Appeals decisions had adopted the proposed interpretation; even in the absence of contrary authority, those two appellate decisions could not establish the adequate judicial consensus needed for implied Congressional ratification. *Jama*, 543 U.S. at 349. In contrast, in *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009), upon which Defendants base their ratification argument, the Supreme Court found implied ratification only because Congress did not change a statutory provision following the Supreme Court's definitive interpretation of that provision in another case. *See also Lorillard v. Pons*, 434 U.S. 575, 580 (1978) (finding ratification where "every court to consider the issue" had interpreted the statute in the same way); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975) (finding ratification because "[t]he Court of Appeals that have confronted the issue are unanimous").

      In this case there is no evidence to support implied ratification. The issue was not debated in Congress, nor, because of the overwhelming secrecy the Executive applied to the legal interpretations of FISA, were there public hearings or a public debate. There is no evidence of

extensive deliberations or any rejected efforts at legislative correction specific to the mass call tracking program.

Defendants' only evidence supporting implied ratification is the assertion that a 5-page report was made available for Members of Congress to read in a secure location for a limited period of time in both 2009 and 2011, when Congress was considering whether to reauthorize Section 215 as a whole. Defs' Mot. to Dismiss Exh. 4 (ECF No. 33-4), Exh. 6 (ECF No. 33-6). However, the 5-page report was only a brief summary, sorely lacking in detail, with only one sentence that hinted at the breadth of the program.[3] Moreover, the report was not made available to House Members in 2011. *See* Defs' Mot. to Dismiss at 27 n.15. Nor were Members of Congress given access to any of the FISC orders approving of the bulk collection of call data.

Even if mere notice were enough, it would have to be *actual* notice. Defendants make no attempt to demonstrate that all, or even most, Members of Congress had actual notice that the government was engaging in the bulk acquisition of the telephone records of Americans. The doctrine of implied ratification is subordinate to the fundamental principle that statutory interpretation turns on Congress' *actual* intent: as such, ratification requires *actual* notice, not constructive notice. The doctrine never has been—and never should be—applied in circumstances like these, where the Executive has kept its interpretation of the law secret and there is no evidence that anything more than a handful of Members of Congress had actual knowledge of the Executive's interpretation.

Regardless of whether Defendants attempted or intended to educate all Members of Congress beyond the intelligence committees, *amicus* attests that he was not aware of the full

---

[3] "The orders generally require production of the business records (as described above) relating to substantially all of the telephone calls handled by the companies, including both calls made between the United States and a foreign country and calls made entirely within the United States." Defs' Mot. to Dismiss, Exh. 5 (ECF No. 33-5) at 4.

scope of the program when he voted to reauthorize Section 215. And *amicus* attests that had he been fully informed he would not have voted to reauthorize Section 215 without change.

But, as set forth above, even if every member of Congress had been fully informed of the program, a mere awareness of a statutory interpretation is not sufficient to establish implied ratification. As *amicus* wrote, "the suggestion that the administration can violate the law because Congress failed to object is outrageous. But let them be on notice: I am objecting right now."[4]

## V.   CONCLUSION

For the above-stated reasons, *amicus curiae* urges this Court to deny Defendants' Motion to Dismiss and grant Plaintiffs' Motion for Summary Judgment.

Dated:  September 4, 2013                By:  /s/ David Greene
                                              David Greene
                                              ELECTRONIC FRONTIER FOUNDATION
                                              815 Eddy Street
                                              San Francisco, CA 94109
                                              Tel: (415) 436-9333
                                              Email: davidg@eff.org

                                              *Counsel for Amicus Curiae*
                                              *Congressman F. James Sensenbrenner, Jr.*

---

[4] Rep. Jim Sensenbrenner, *How Obama Abused the Patriot Act: The White House 's justification for collecting Americans' phone data doesn't stand up to the light of day*, LATIMES.COM, August 19, 2013, <latimes.com/opinion/commentary/la-oe-sensenbrenner-data-patriot-act-obama-201308190,0,138781.story>.

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of New York by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 4, 2013                By: /s/ David Greene
                                            David Greene
                                            ELECTRONIC FRONTIER FOUNDATION
                                            815 Eddy Street
                                            San Francisco, CA 94109
                                            Tel: (415) 436-9333
                                            Email: davidg@eff.org

                                            *Counsel for Amicus Curiae*
                                            *Congressman F. James Sensenbrenner, Jr.*