**EXHIBIT 2**

UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D.C.

---

IN RE APPLICATION OF THE
FEDERAL BUREAU OF INVESTIGATION FOR           Docket Number: BR 14-01
AN ORDER REQUIRING THE PRODUCTION
OF TANGIBLE THINGS

---

**OPINION AND ORDER**

This matter is before the United States Foreign Intelligence Surveillance Court ("FISC" or "Court") on the motion of the government for a second amendment to the Primary Order issued on January 3, 2014, in the above-captioned docket ("January 3 Primary Order" or "Jan. 3 Primary Order"), which was submitted on February 25, 2014 ("Motion"). In the January 3 Primary Order, the Court approved the government's application pursuant to Section 501 of the Foreign Intelligence Surveillance Act of 1978 ("FISA" or "the Act"), codified at 50 U.S.C. § 1861, as amended (also known as Section 215 of the USA PATRIOT Act),[1] for orders requiring the production to the National Security Agency ("NSA"), on an ongoing basis, of all

---

[1] "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001," Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001) ("USA PATRIOT Act"), amended by the "USA PATRIOT Improvement Reauthorization Act of 2005," Pub. L. No. 109-177, 120 Stat. 192 (Mar. 9, 2006); "USA PATRIOT Act Additional Reauthorizing Amendments Act of 2006," Pub. L. No. 109-178, 120 Stat. 278 (Mar. 9, 2006); and Section 215 expiration extended by the "Department of Defense Appropriations Act, 2010," Pub. L. No. 111-118 (Dec. 19, 2009); "USA PATRIOT - Extension of Sunsets," Pub. L. No. 111-141 (Feb. 27, 2010); "FISA Sunsets Extension Act of 2011," Pub. L. No. 112-3 (Feb. 25, 2011); and the "PATRIOT Sunsets Extension Act of 2011," Pub. L. No. 112-14, 125 Stat. 216 (May 26, 2011).

call detail records or "telephony metadata" from certain telecommunications carriers ("BR metadata"). The January 3 Primary Order approved and adopted a detailed set of minimization procedures restricting the NSA's retention and use of the BR metadata, including a requirement that telephony metadata produced in response to the Court's orders be destroyed within five years. The government seeks to modify this destruction requirement in order to permit the government to retain telephony metadata beyond the five years subject to further restrictions on the NSA's accessing and use of the metadata. The motion asserts that such relief is needed because destruction of the metadata "could be inconsistent with the Government's preservation obligations in connection with civil litigation pending against it." Motion at 2. For the reasons set forth below, the Motion is DENIED without prejudice.

The January 3 Primary Order provides that "[w]ith respect to the information that NSA receives as a result of this Order, [2] NSA shall strictly adhere to the minimization procedures [set forth in the Primary Order]." Jan. 3 Primary Order at 4. Those procedures include the requirement that "BR metadata shall be destroyed no later than five years (60 months) after its initial collection." Id. at 14. The government seeks an amendment to the Court's order that would allow the NSA "to preserve and/or store the BR metadata for non-analytic purposes until relieved of its preservation obligations," subject to certain access restrictions. Motion at 3, 8.

This Court is cognizant of the general obligation of civil litigants to preserve records that could potentially serve as evidence. Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) ("obligation to preserve evidence arises when the party has notice that the evidence is relevant to

---

[2] The Court understands the government to be requesting changes to the minimization procedures that the NSA applies to the telephony metadata acquired under this order and all previous orders issued by the FISC for the production of such metadata.

litigation - most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation"); see also Gerlich v. U.S. Dep't of Justice, 711 F.3d 161, 171 (D.C. Cir. 2013) (duty to preserve is triggered by a reasonably foreseeable Department investigation, which was "not merely foreseeable but likely"). The government contends that its duty to preserve the BR metadata "supersedes statutory or regulatory requirements or records-management policies that would otherwise result in the destruction of the information." Motion at 7. From that premise, it would follow that FISA's minimization requirements would yield to a duty to preserve, regardless of what the statute states. The Court rejects this premise.

The government cites three cases in support of its position: R.F.M.A.S., Inc. v. So, 271 F.R.D. 13 (S.D.N.Y. 2010), Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284 (S.D.N.Y. 2009), and Zubulake v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004). Although the destruction of electronic records was an issue in all three cases, see R.F.M.A.S. at 40; Green at 287-88; Zubulake at 434, none of these cases involved a conflict between a litigant's duty to preserve electronic records and a statute or regulation that required their destruction. They merely demonstrate that, when triggered, a civil litigant's duty to preserve relevant evidence includes electronic records and that duty trumps a corporate document destruction policy. The Court has not found any case law supporting the government's broad assertion that its duty to preserve supersedes statutory or regulatory requirements.

Moreover, as the government acknowledges, see Motion at 6 (citing Silvestri v. Gen. Motors, 271 F.3d 583, 590-91 (4th Cir. 2001)), the general obligation to preserve records that

may be relevant to the civil matters cited by the government is a matter of federal common law. As such, it may be displaced by statute whenever Congress speaks directly to the issue. See, e.g., Am. Electric Power Co. v. Connecticut, 131 S. Ct. 2527, 2537 (2011). Here, with respect to the retention of records produced under Section 1861, Congress has sought to protect the privacy interests of United States persons by requiring the government to apply minimization procedures that restrict the retention of United States person information. See 50 U.S.C. § 1861(g)(2) (definition of "minimization procedures" set out below). As specifically provided for by Congress, the procedures in question are embodied in FISC orders that the government is obliged to follow. See Id. § 1861(c)(1). In sharp contrast with the document retention policies of corporations, the restrictions on retention of United States person information embodied in FISA minimization procedures are the means by which Congress has chosen to protect the privacy interests of United States persons when they are impacted by certain forms of intelligence gathering.

The government's contention that FISA's minimization requirements are superseded by the common-law duty to preserve evidence is simply unpersuasive. The procedures proposed by the government accordingly must stand or fall based on whether they comport with FISA. Specifically, Section 1861(g)(2) defines "minimization procedures" as follows:

> (A) specific procedures that are reasonably designed in light of the purpose and technique of an order for the production of tangible things, to minimize the retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information;
>
> (B) procedures that require that nonpublicly available information, which is not foreign intelligence information, as defined in section 1801(e)(1) of this title, shall

> not be disseminated in a manner that identifies any United States person, without such person's consent, unless such person's identity is necessary to understand foreign intelligence information or assess its importance; and
>
> (C) notwithstanding subparagraphs (A) and (B), procedures that allow for the retention and dissemination of information that is evidence of a crime which has been, or is about to be committed and that is to be retained or disseminated for law enforcement purposes.

50 U.S.C. § 1861(g)(2).

The government's proposed amendment of the minimization procedures would allow the NSA to retain call detail records that were acquired more than five years ago and that would otherwise be destroyed. Given the scope of the production under the Court's orders, the number of records is likely voluminous and they undoubtably contain United States person information, including information concerning United States persons who are not the subject of an FBI investigation to protect against international terrorism or clandestine intelligence activities. See In Re Production of Tangible Things From [redacted], No. BR 08-13 at 11-12 (FISA Ct. Mar. 2, 2009).[3] Further, under the amended procedures proposed by the government, such records would be retained indefinitely while the six civil matters currently pending in various courts are litigated.[4] The government's proposed amendment would, therefore, significantly increase the

---

[3] Available at: http://www.dni.gov/files/documents/section/pub_March%202%202009%20Order%20from%20FISC.pdf.

[4] The six pending matters identified by the government are: American Civil Liberties Union v. Clapper, No. 13-cv-3994 (WHP) (S.D.N.Y.), appeal docketed, No. 14-42 (2d Cir. Jan. 2, 2014); Klayman v. Obama, Nos. 13-cv-851, 13-cv-881, 14-cv-092 (RJL) (D.D.C.), appeals docketed, No. 14-5004 (D.C. Cir. Jan. 3, 2014), No. 14-5005 (D.C. Cir. Jan. 3, 2014), No. 14-5016 (D.C. Cir. Jan. 10, 2014), No. 14-5017 (D.C. Cir. Jan. 10, 2014); Smith v. Obama, No. 13-cv-00257 (D. Idaho); First Unitarian Church v. National Security Agency, No. 3:13-cv-2387 (JSW) (N.D.Cal.); Paul v. Obama, No. 14-cv-0262 (RJL) (D.D.C.); and Perez v. Clapper, No. 3:14-cv-0050-KC (W.D. Tx.). Motion at 3-5.

amount of nonpublicly available information concerning United States persons being retained by the government under the minimization procedures.

Extending the period of retention for these voluminous records increases the risk that information about United States persons may be improperly used or disseminated. The government seeks to mitigate this risk by imposing certain access restrictions on the data being retained. Specifically, the government proposes to: (1) store the information in a format that precludes any access or use by NSA intelligence analysts for any purpose; (2) permit NSA technical personnel to access the BR metadata, but only for the purpose of ensuring continued preservation and/or storage, as well as the integrity of, the BR metadata; and (3) require this Court's approval before allowing "any further accesses" to the BR metadata for civil litigation purposes. Motion at 8.

As noted above, in order to approve the proposed modifications to the minimization procedures, the Court must find that they "are reasonably designed in light of the purpose and technique of an order for the production of tangible things, to minimize the retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information." 50 U.S.C. § 1861(g)(2)(A). For the following reasons, the Court concludes that it cannot make this finding based on the government's motion.

The sole purpose of the production of call detail records under the Court's January 3, 2014 Primary Order is to obtain foreign intelligence information in support of individual authorized investigations to protect against international terrorism and concerning various international organizations. In Re Application of the Fed. Bureau of Investigation for an Order

6

Requiring the Production of Tangible Things From [redacted], No. BR 13-109 (FISA Ct. Aug. 29, 2013) (Amended Memorandum Opinion at 4).[5] In order to accomplish this objective, the government acquires call detail records in bulk in order to create a historical repository of metadata that enables the NSA to find or identify known and unknown operatives, some of whom may be in the United States or in communication with United States persons. Id. at 21. Thus, the "technique" employed by the government by necessity captures a large volume of information, i.e., metadata, of or concerning United States persons.

Examining the government's proposed amendment in light of the purpose and technique of the government's program, it is clear the proposed retention of the BR metadata beyond five years is unrelated to the government's need to obtain, produce, and disseminate foreign intelligence information. This conclusion in compelled because the BR metadata loses its foreign intelligence value after five years. See The Administration's Use of FISA Authorities: Hearing before the H. Comm. on the Judiciary, 113th Cong. 16 (Jul. 17, 2013) http://www.fas.org/irp/congress/2013_hr/fisa.pdf (statement of John C. Inglis, NSA) ("Typically in our holdings, under BR FISA, the information is mandatorily destroyed at 5 years. For most of the rest of our collection, 5 years is the reference frame. We found that over time at about the 5-year point, it loses its relevance simply in terms of its temporal nature."). Further, the amendment is sought "for the limited purpose of allowing the Government to comply with its [purported] preservation obligations," and any possibility of obtaining, producing, or disseminating foreign intelligence information from the BR metadata being retained is foreclosed

---

[5]Available at http://www.uscourts.gov/uscourts/courts/fisc/br13-09-primary-order.pdf.

by the requirement that the data be stored in a format "that precludes any access or use by NSA intelligence analysts for any purpose." Motion at 1, 8.

Therefore, unlike most cases where this Court examines the adequacy of minimization procedures, the amendment proposed by the government provides no occasion to balance United States person privacy interests against foreign intelligence needs.[6] Rather, the countervailing interest asserted by the government is the purported litigation interests of the civil plaintiffs in having these records preserved.[7] Even if it is assumed that the Court, in assessing whether the proposed minimization procedures satisfy Section 1861(g)(2), should afford some weight to the civil litigants' purported interests in preserving the BR metadata, those interests, at least on the current record, are unsubstantiated.

To date, no District Court or Circuit Court of Appeals has entered a preservation order applicable to the BR metadata in question in any of the civil matters cited in the motion. Motion at 6 n.3. Further, there is no indication that any of the plaintiffs have sought discovery of this

---

[6] Nor does the government assert any law enforcement interest in retaining the information as evidence of a crime. See 50 U.S.C. § 1861(g)(2)(C).

[7] The government suggests that FISA's legislative history supports the retention requested. Motion at 9 (citing H.R. Rep. No. 95-1283, 95th Cong., 2d Sess, pt.1 at 89 (1978); S. Rep. No. 95-604, 95th Cong. 2d Sess., pt.1 at 55-56 (1978)) (the preservation of evidence in civil proceedings is consistent with FISA because "Congress did not intend FISA or the minimization procedures adopted pursuant to section 1801(h) [respecting electronic surveillance] to abrogate the rights afforded to defendants in criminal proceedings."). But the legislative history cited does not concern minimization at all. Rather, it pertains to the provisions of FISA at 50 U.S.C. § 1806 that govern district court review of the lawfulness of FISA surveillances in the context of adversarial proceedings in which the government seeks to introduce the fruits of electronic surveillance. FISA has no comparable provisions for use of information acquired under Section 1861. And obviously, the government's motion has nothing to do with the rights of criminal defendants. The cited legislative history sheds no light on what is before the Court, i.e., the nexus of minimization requirements and the retention of information for purposes of civil litigation.

information or made any effort to have it preserved, despite it being a matter of public record that BR metadata is routinely destroyed after five years. See, e.g., In Re Application of the Fed. Bureau of Investigation for an Order Requiring the Production of Tangible Things From [redacted], No. BR 06-05 Primary Order at 8 (FISA Ct. Aug. 18, 2006) declassified on Sept. 10, 2013[8] ("[t]he metadata collected under this Order may be kept online ... for five years, at which time it shall be destroyed."); In Re Application of the Fed. Bureau of Investigation for an Order Requiring the Production of Tangible Things From [redacted], No. BR 13-109 Primary Order at 2, 14 (FISA Ct. July 19, 2013) declassified on Sept. 17, 2013 ("[T]he minimization procedures [including the destruction requirement in subsection 3(E)] ... are similar to the minimization procedures approved and adopted as binding by the order of this Court in Docket Number BR 13-80 and its predecessors"). In fact, with one possible exception, the substantive relief sought by the plaintiffs would require the destruction of BR metadata, not its retention.[9] Motion at 3-5.

For its part, the government makes no attempt to explain why it believes the records that are subject to destruction are relevant to the civil cases. The government merely notes that "'[r]elevant' in this context means relevant for purposes of discovery, ... including information that relates to the claims or defenses of any party, as well as information that is reasonably calculated to lead to the discovery of admissible evidence." Motion at 6. Similarly, the government asserts that "[b]ased on the issues raised by Plaintiffs," the information must be

---

[8] Available at: http://www.dni.gov/files/documents/section/pub_May%2024%202006%20Order%20from%20FISC.pdf.

[9] The one possible exception identified in the motion is that the pro se plaintiffs in Perez v. Clapper are challenging the legality of the NSA bulk telephony metadata collection program in a "Bivens action" seeking monetary damages of $1. Motion at 5.

retained, but it fails to identify what those issues are and how the records might shed light on them.[10] Id. at 7. Finally, the motion asserts, without any explanation, that "[b]ased on the claims raised and the relief sought, a more limited retention of the BR metadata is not possible as there is no way for the Government to know in advance and then segregate and retain only that BR metadata specifically relevant to the identified lawsuits." Id. Of course, questions of relevance are ultimately matters for the courts entertaining the civil litigation to resolve. But the government now requests this Court to afford substantial weight to the purported interests of the civil litigants in retaining the BR metadata relative to the primary interests of the United States persons whose information the government seeks to retain. The government's motion provides scant basis for doing so.

      The government's motion seems to be motivated to a significant degree by its fear that the judges presiding over the six pending civil matters may sanction the government at some point in the future for destroying BR metadata that is more than five years old. Id. at 6. Yet the cases cited by the government show that, in order for the government to be sanctioned for spoliation of evidence, the plaintiffs must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support

---

[10] The motion identifies one possible issue: "[a]ccording to the Complaint, plaintiffs [in Paul v. Obama] apparently anticipate attempting to ascertain the exact size and identities of the putative class and its members through the Government's acquired BR Metadata ...." Motion at 5. But the government then suggests that the metadata will not be helpful in this regard since it "does not contain the substantive contents of any communication,... or the name, address or financial information of a subscriber or customer." Id.

that claim or defense. Green, 262 F.R.D. at 289; Zubulake, 229 F.R.D. at 430. On the current record, such an outcome appears far-fetched, as the plaintiffs appear not to have made any attempt to have the BR metadata retained, despite being on notice that the government has a statutorily-mandated obligation to destroy the information that is embodied in prior orders of this Court. Further, it would appear that the government could significantly reduce its exposure by simply notifying the plaintiffs and the district courts of the pending destruction. United States v. Ochoa, 88 Fed. App'x 40, 42, 2004 WL 304183 (C.A.5 (Tex.)) (disposal of evidence was done pursuant to a routine policy, and plaintiff was informed of steps she would need to take to retrieve the evidence prior to its disposal but declined to do so).

    To sum up, the amended procedures would further infringe on the privacy interests of United States persons whose telephone records were acquired in vast numbers and retained by the government for five years to aid in national security investigations. The great majority of these individuals have never been the subject of investigation by the Federal Bureau of Investigation to protect against international terrorism or clandestine intelligence activities. The government seeks to retain these records, not for national security reasons, but because some of them may be relevant in civil litigation in which the destruction of those very same records is being requested. However, the civil plaintiffs potentially interested in preserving the BR metadata have expressed no desire to acquire the records, even though they have notice that this Court's orders require destruction after five years and that production of the records commenced in 2006.

    On this record, the Court cannot find that the amended minimization procedures proposed by the government "are reasonably designed in light of the purpose and technique of an order for

the production of tangible things, to minimize the retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information." 50 U.S.C. § 1861(g)(2)(A). While the proposed procedures would include enhanced retention on access to, and use of, BR metadata after five years, see Motion at 8, the demonstrated need for preservation does not warrant retention after five years, even with such limitations.[11]

This Court is reluctant to take any action that could impede the proper adjudication of the identified civil suits, and understands why the government would proceed with caution in connection with records potentially relevant to those matters. However, as explained above, the Court cannot make the finding required to grant the motion based upon the record before it. Accordingly, the government's motion is DENIED, without prejudice to the government bringing another motion providing additional facts or legal analysis, or seeking a modified amendment to the existing minimization procedures.

SO ORDERED, this 7th day of March, 2014, in Docket Number BR 14-01.

REGGIE B. WALTON
Presiding Judge, United States Foreign
Intelligence Surveillance Court

---

[11] By minimizing retention, Congress intended that "information acquired, which is not necessary for obtaining[,] producing or disseminating foreign intelligence information, be destroyed where feasible." In Re Sealed Case, 310 F.3d 717, 731 (FISA Ct. Rev. 2002) (citing H.R. Rep. No. 95-1283, pt. 1, at 56 (1978)).

12